1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

LESLIE CARNAHAN,

NO.  C14-600-RSM-JPD

9

Plaintiff,

10

v.

REPORT AND
RECOMMENDATION

11

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

12

13

Defendant.

14      Plaintiff Leslie Carnahan appeals the final decision of the Commissioner of the Social

15  Security Administration ("Commissioner") which denied her applications for Disability

16  Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

17  of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

18  administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that

19  the Commissioner's decision be reversed and remanded for further administrative proceedings.

20                    I.        FACTS AND PROCEDURAL HISTORY

21      At the time of the administrative hearing, plaintiff was a 37 year old woman with a

22  GED.  Administrative Record ("AR") at 41-42.  Her past work experience includes

23  employment as a fast food worker, customer service clerk, order clerk, telephone solicitor,

24

REPORT AND RECOMMENDATION - 1

group home attendant, and nursing home intake worker.  AR at 60-61.  Plaintiff was last gainfully employed in 2010.  AR at 37, 200-10.

On March 22, 2011, plaintiff protectively filed concurrent claims for SSI payments and DIB, alleging an onset date of July 7, 2008.  AR at 192-99.  At the administrative hearing, plaintiff amended her alleged disability onset date to January 1, 2011.  AR at 37.  Plaintiff asserts that she is disabled due to depression, anxiety, panic attacks, and obesity.  AR at 228.

The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 120-28, 130-41.  Plaintiff requested a hearing which took place on September 11, 2012.  AR at 31-69.  On November 27, 2012, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on a finding that plaintiff could perform other jobs existing in significant numbers in the national economy such as final assembler, lens inserter, bonder semiconductor processor, and touch up screener.  AR at 9-30.  Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-6, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On April 23, 2014, plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. No. 1.

## II.      JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.      STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is

REPORT AND RECOMMENDATION - 2

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.    EVALUATING DISABILITY

As the claimant, Ms. Carnahan bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§

REPORT AND RECOMMENDATION - 3

1    423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments

2    are of such severity that she is unable to do her previous work, and cannot, considering her age,

3    education, and work experience, engage in any other substantial gainful activity existing in the

4    national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-

5    99 (9th Cir. 1999).

6        The Commissioner has established a five step sequential evaluation process for

7    determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§

8    404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At

9    step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at

10   any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step

11   one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R.

12   §§ 404.1520(b), 416.920(b).[1]  If she is, disability benefits are denied.  If she is not, the

13   Commissioner proceeds to step two.  At step two, the claimant must establish that she has one

14   or more medically severe impairments, or combination of impairments, that limit her physical

15   or mental ability to do basic work activities.  If the claimant does not have such impairments,

16   she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe

17   impairment, the Commissioner moves to step three to determine whether the impairment meets

18   or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d),

19   416.920(d).  A claimant whose impairment meets or equals one of the listings for the required

20   twelve-month duration requirement is disabled.  *Id.*

21

22
_____

23       [1] Substantial gainful activity is work activity that is both substantial, i.e., involves
     significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. §
24   404.1572.

REPORT AND RECOMMENDATION - 4

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On November 27, 2012, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2013.

2. The claimant has not engaged in substantial gainful activity since January 1, 2011, the alleged onset date.

3. The claimant has the following severe impairments: obesity; post-traumatic stress disorder; depression; anxiety; panic attacks.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) subject to the following limitations: the claimant can occasionally balance, can bend, squat, and kneel enough to get in and out of a chair, and can never crawl. The claimant must avoid concentrated exposure to vibration and hazards. The claimant can tolerate occasional changes in the work

REPORT AND RECOMMENDATION - 5

setting, as well as occasional interaction with coworkers and the public, and can perform simple routine tasks.

6.      The claimant is unable to perform any past relevant work.

7.      The claimant was born on XXXXX, 1975 and was 36 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.[2]

8.      The claimant has at least a high school education and is able to communicate in English.

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.     The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2011, through the date of this decision.

AR at 14-25.

## VI.      ISSUES ON APPEAL

As identified in plaintiff's Opening Brief, the principal issues on appeal are:

1.      Whether the ALJ properly evaluated the specialist opinions of Ms. Carnahan's treating psychiatrist and an examining psychologist.

2.      Whether the ALJ provided clear and convincing reasons for rejecting Ms. Carnahan's testimony.

3.      Whether the ALJ provided germane reasons for rejecting the lay testimony.

4.      Whether the ALJ should have ordered a consultative evaluation.

Dkt. No. 13 at 1.

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

1

VII.    DISCUSSION

2

A.    The ALJ's Assessment of the Medical Evidence

3      Plaintiff argues the ALJ erred by giving little weight to the medical opinions of treating

4 psychiatrist Nagavedu Raghunath, M.D., and examining psychologist David Widlan, Ph.D.

5 Dkt. 13 at 3-15.  Dr. Raghunath, opined plaintiff's "anxiety and mood symptoms interfere with

6 her ability to concentrate, follow directions" and retain information to "satisfactorily complete

7 work tasks."  AR at 391.  Dr. Raghunath noted plaintiff's panic symptoms impact her ability to

8 engage in the community and prevent her from using public transportation and driving.  AR at

9 391-92.  Dr. Raghunath further opined that plaintiff's mental health symptoms negatively

10 impact her "consistent/productive engagement" including plaintiff's ability to attend

11 appointments and complete tasks on a consistent basis.  AR at 391-92.  Similarly, Dr. Widlan

12 opined plaintiff has significant adaptive deficits, becomes easily overwhelmed with stress, and

13 has difficulty negotiating social stressors outside of her home.  AR at 398.  Dr. Widlan also

14 opined that plaintiff would likely have difficulties with absenteeism and persistence in a work

15 setting.  AR at 397.

16      Plaintiff asserts these opinions are significant because the vocational expert ("VE")

17 testified that an individual who was absent three or more days a month or off task more than 20

18 percent of the time would have a problem sustaining employment.  AR at 68.  It also is notable

19 that the ALJ's residual functional capacity finding includes no attendance related limitations

20 and no clear persistence related limitations.  AR at 17.  This Court agrees that the ALJ's

21 assessment of these medical opinions is legally insufficient.

22      As a matter of law, more weight is given to a treating physician's opinion than to that

23 of a non-treating physician because a treating physician "is employed to cure and has a greater

24 opportunity to know and observe the patient as an individual."  *Magallanes v. Bowen*, 881 F.2d

747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives

1   more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a

2   non-examining doctor's opinion may nonetheless constitute substantial evidence if it is

3   consistent with other independent evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947,

4   957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

5          Here, instead of adopting the opinions of the doctors who treated and examined

6   plaintiff, the ALJ gave more weight to the opinions of state agency medical consultants Leslie

7   Postovoit, Ph.D., and Eugene Kester, M.D., who neither met nor examined plaintiff.  AR at 21-

8   22.  The ALJ's treatment of this evidence is inconsistent with the legal standards set forth in

9   *Orn.  See,* 495 F.3d at 631.  Accordingly, the ALJ's assessment of the medical evidence is

10  legally insufficient and should be reversed and remanded for further proceedings.

11         Plaintiff also raises issue with the ALJ's assessment of her credibility and the

12  credibility of various lay witnesses who provided evidence on plaintiff's behalf.  Dkt. 13 at 15-

13  19 (arguing the ALJ failed to provide germane reasons for rejecting the lay witness testimony

14  of plaintiff's husband, mother-in-law, and friend Julie Campbell).  Here, the lay witness

15  testimony of plaintiff's husband, mother-in-law, and friend is generally consistent with the

16  medical opinions provided by Drs. Raghunath and Widlan regarding plaintiff's attendance and

17  other difficulties.  *See* AR at 274 (noting plaintiff's tendency to isolate and get overwhelmed

18  and discussing plaintiff's mood swings and difficulty attending appointments), 276 (discussing

19  plaintiff's mood swings and concentration difficulties and noting that plaintiff gets

20  overwhelmed), 278 (discussing plaintiff's mood swings, difficulty leaving the home, and

21  difficulty completing household chores).

22         The Court already has concluded that the ALJ erred in reviewing the medical evidence

23  and that this matter should be reversed and remanded for further consideration.  In addition, a

24  determination of a claimant's credibility relies in part on the assessment of the medical

evidence. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c). Therefore, plaintiff's credibility should be assessed anew following remand of this matter.

As with a claimant's credibility, a determination of the credibility of a lay witness depends, in part, on an assessment of the consistency of the lay witness's opinions with other evidence, including the medical evidence. *See* SSR 06-03p ("appropriate to consider such factors as…whether the [lay witness] evidence is consistent with other evidence…"). Because the testimony of the lay witnesses is generally consistent with the medical opinions of Drs. Raghunath and Widlan, and the ALJ erred in assessing this evidence, the credibility of plaintiff's husband, mother-in-law, and friend should also be assessed anew.

B. This Matter Should Be Remanded for Further Administrative Proceedings

Plaintiff argues that remand for an award and calculation of benefits is the appropriate remedy in this case. Alternately, plaintiff asserts that if this case is not remanded for an award of benefits, remand for a consultative evaluation of plaintiff's knee pain is warranted. Dkt. 13 at 19-21. The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id*. Such is not the case here.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan*

*v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002).  Here, there are outstanding issues that must be resolved before a determination of disability can be made, including the weight to be given to the various medical opinions in the record.  For this reason, remand for further administrative proceedings is the appropriate remedy in this case.

The Court now turns to plaintiff's request for a consultative evaluation to further assess plaintiff's knee pain.  This Court already has determined that this case should be remanded for further administrative proceedings.  Additionally, the Court acknowledges that medical evidence may be added to the record on remand that could impact the ALJ's assessment of plaintiff's physical impairments, including obesity and knee pain.  As such, on remand, the ALJ shall assure that the medical record is fully and fairly developed regarding functional limitations arising from plaintiff's physical impairments, and, if warranted by the updated medical record, call on the services of a medical consultant.  *See Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001) (duty to develop the record only triggered when the evidence in the record is ambiguous or inadequate to allow for proper evaluation thereof).

VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g) and not inconsistent with the Court's instructions.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **January 27, 2015**.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **January 30, 2015**.

This Report and Recommendation is not an appealable order.  Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

DATED this 13th day of January, 2015.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 12